IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BARRY WILSON            )
                        )
    v.                  )   NO. 3:19-0798
                        )
MIDDLE TENNESSEE STATE  )
UNIVERSITY and          )
THE STATE OF TENNESSEE  )

**TO:  Honorable Aleta A. Trauger, District Judge**

R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered October 30, 2019 (Docket Entry No. 7), this *pro se* action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court is the motion to dismiss (Docket Entry No. 10) filed by Defendants Middle Tennessee State University and the State of Tennessee. The motion is opposed by Plaintiff. *See* Docket Entry No. 15. For the reasons set out below, the undersigned respectfully recommends that the motion be granted in part and denied in part.

**I.  BACKGROUND**

Barry Wilson ("Plaintiff") filed this lawsuit *pro se* and *in forma pauperis* on September 11, 2019, against Middle Tennessee State University ("MTSU") and the State of Tennessee (hereinafter referred to collectively as "Defendants"). Plaintiff brings claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq*. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), and the Americans with

Disabilities Act, 42 U.S.C. §§ 12102, *et seq*. ("ADA"). *See* Complaint (Docket Entry No. 1). Plaintiff, who asserts that he is of mixed race (Native American/Caucasian) and that he was terminated from his employment at MTSU, alleges unlawful discrimination based on race, age, and disability, as well as unlawful retaliation. *Id*. at 4. As relief, he requests $1,000,000.00, *id*. at 6, and to be awarded "restitution, retirement, benefits, compensation, [and] to be made whole for any anguish or emotional distress." *Id*. at 8.

Upon initial review of the form complaint submitted by Plaintiff, a two page typed attachment to the form complaint (Docket Entry No. 1 at 7-8), the charge of discrimination, Charge # 494-2018-01179, that he submitted to the Equal Employment Opportunity Commission on March 13, 2018 ("2018 EEOC Charge") (Docket Entry No. 6 at 28),[1] and a response letter, dated November 17, 2018, that he wrote to the EEOC after being provided with MTSU's position statement on his 2018 EEOC Charge (Docket Entry No. 1-1 at 5-7), the Court found that Plaintiff raised claims under Title VII, the ADEA, and the ADA that were sufficient to warrant issuing process to Defendants. In lieu of an answer, Defendants have filed the pending motion to dismiss.

As is the case with many lawsuits written by *pro se* plaintiffs, determining the actual claims and allegations at issue is a somewhat difficult endeavor. Plaintiff's form complaint contains checkmarked boxes for "termination of my employment," "failure to accommodate my disability," "unequal terms and conditions of employment," "retaliation," and "other," but contains no factual allegations. While the two page attachment to the form complaint clarifies Plaintiff's legal claims

---

[1] Attached to Plaintiff's complaint is the dismissal notice and right to sue letter from the EEOC, dated June 13, 2019, for the 2018 EEOC Charge. *See* Docket Entry No. 1-1 at 1-4.

to some extent and sets out general allegations of wrongdoing, it contains very few specific allegations. Plaintiff's 2018 EEOC Charge provides some factual specifics, asserting:

> I was hired by the above listed employer March 2011 as a Maintenance worker . . . I am a male (53) of mix race (Native American/Caucasian) in 2014 I filed an complaint about the treatment of minorities in the department, shortly thereafter I was injured on the job. I am also an individual with a disability. On July 31st, 2015, I suffered an on the job injury which left me with permanent restrictions. My doctor released me to return to work on July 24, 2017. I was sent to the ADA coordinator and requested reasonable accommodations due to my disability and it was denied. Younger employees of other races in similar situations were granted reasonable accommodations that includes new positions, however my requests were denied.

*See* Docket Entry No. 6 at 28. Plaintiff's letter to the EEOC greatly expands on Plaintiff's factual allegations, but this letter served a different purpose than does a legal complaint and it does not set out specific legal claims.

Although the Court cannot supply or assume facts that are not pled or create claims for a party that are not pled, *see Bell v. Tennessee*, 2012 WL 996560 at *9 (E.D. Tenn. March 22, 2012) (quoting *Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215 (6th Cir. 2000), the Court is required to give the pleadings of *pro se* litigants a certain amount of liberal construction. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). After review of the various filings made by Plaintiff and in light of these legal guideposts, it appears to the Court that Plaintiff's claims are as follows:

(1) a Title VII claim for racial discrimination, workplace harassment, and retaliation based upon workplace events occurring in 2014 and prior;

(2) an ADA claim based upon allegations that he was not given a reasonable accommodation by MTSU that would have allowed him to continue working when he was released to return to work in July 2017 with permanent restrictions;

3

3) an ADA claim that MTSU failed to maintain "ADA accessible building(s)" by not having an elevator in "the Boiler building," where some of Plaintiff's job duties took place;

(4) claims under Title VII and the ADEA based upon the allegation that other MTSU employees who were "younger" and "of other races" were granted reasonable accommodations; and,

(5) a claim that MTSU retaliated against him because of his 2018 EEOC Charge by taking actions that prevented him from using "the sick leave bank" and that caused him to lose his health insurance and retirement status.

## II. MOTION TO DISMISS AND RESPONSE

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff fails to state claims upon which relief can be granted. Defendants argue that Plaintiff's Title VII claim is not timely because the 2018 EEOC Charge he filed was not filed within 300 days of the alleged unlawful events. Defendants then argue that Plaintiff's claims under the ADEA and the ADA are barred by state sovereign immunity that has not been waived by Tennessee. *See* Brief In Support (Docket Entry No. 11).[2]

Plaintiff makes a number of arguments in response. He contends that Defendants have "failed due process in delivering documents" to him. *See* Answer to Motion to Dismiss (Docket Entry No.15-1) at 1. He argues that Rule 12(b)(6) does not apply to the timeliness of a complaint and that he filed his lawsuit within the 90 day time period provided for in the right to sue letter. *Id*. He further asserts that dismissal of his claim of retaliation based on his filing the 2018 EEOC Charge

---

[2] The Court notes that Defendants' supporting brief contains a section for Plaintiff's factual allegations but it does not actually include a recitation of the facts alleged by Plaintiff. *See* Brief at 2. Defendants also barely identify what they view as Plaintiff's specific legal claims.

4

would be premature because that claim is currently pending before the EEOC on a separate charge of discrimination, Charge # 494-2019-01749, for which there has not been a determination. *Id*. Plaintiff appears to argue that his other claims should not be dismissed because the EEOC issued a right to sue letter allowing him to bring a lawsuit on the claims. *Id*.

Plaintiff then lists four examples when safety regulations were not followed at MTSU and the safety of individuals was put at risk. *Id*. at 1-2. He asserts that MTSU ignored blueprints that called for an elevator to be placed in the "Co-generation Central Plant" building and argues that the lack of an elevator was a main reason that he was not returned to work and its absence also discriminated against other handicapped individuals. *Id*. at 2. Plaintiff argues that MTSU must fully comply with all ADA guidelines because it receives federal funds for "any an all disabled." *Id.* Finally, Plaintiff argues that giving Defendants "immunity from prosecution" would allow them to "do as they please without repercussion," *id*. at 3, and he lists the names of seven MTSU employees, one of whom he alleges assaulted both Plaintiff and another co-worker yet was permitted to keep his job and retire with benefits. *Id*. at 3-5.

Defendants did not file a reply to Plaintiff's response.

### III. STANDARD OF REVIEW

In reviewing a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the well-pleaded material allegations of the pleadings as true. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). However, the pleadings must provide the grounds for Plaintiff's entitlement to relief and consist of more than "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662

(2009). The well pleaded factual allegations must show a plausible right to relief. *Twombly*, 550 U.S. at 555-61. To state a plausible claim for relief, the alleged facts must provide "more than a sheer possibility that a defendant has acted unlawfully." *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

As an initial matter, the Court finds no merit in the general arguments raised by Plaintiff in his response. First, Plaintiff fails to explain what he means by the assertion that Defendants "failed due process in delivering documents" to him, let alone explain how this contention rebuts the motion to dismiss. Second, Plaintiff is mistaken in his belief that his receipt of the right to sue letter from the EEOC means that his claims cannot be dismissed. The issuance of a right to sue letter merely means that the EEOC has completed its administrative processing of a charge of discrimination and that the charging party is permitted to pursue legal remedies on the alleged acts of discrimination. The issuance of a right to sue letter to Plaintiff does not foreclose Defendants from raising defenses in this lawsuit or prevent the Court from dismissing claims because of valid defenses. Finally, Plaintiff's employment discrimination lawsuit is not an avenue for Plaintiff to raise complaints about safety issues at MTSU. Whether or not MTSU complies with safety guidelines is not relevant to Plaintiff's employment discrimination claims.

1. Timeliness of Title VII Claim

Plaintiff's Title VII claim based upon work events occurring in 2014 and before must be dismissed as untimely. Prior to bringing a federal action under Title VII, a plaintiff must file a timely charge of employment discrimination with the EEOC. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989). In order to be timely, a charge must be filed with the EEOC within 180 days after the occurrence of the alleged discriminatory employment practice, or within 300 days if the claimant has "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e)(1). Because Plaintiff's 2018 EEOC Charge was filed with the Tennessee Human Rights Commission, it must have been filed within 300 days from the alleged acts of discrimination. However, his charge was not filed until March 13, 2018, several years beyond the alleged acts of racial discrimination and harassment and well beyond the 300-day deadline. Accordingly, this Title VII claim is not timely.

Plaintiff's arguments that his claim cannot be dismissed on untimeliness grounds pursuant to a Rule 12(b)(6) motion is incorrect. A plaintiff's failure to timely exhaust administrative remedies is an appropriate basis for the dismissal of a Title VII claim. *Williams v. Northwest Airlines, Inc.*, 53 Fed.App'x 350, 351 (6th Cir. 2002). Likewise, Plaintiff is incorrect that his claim is timely because it was filed within the 90-day time period provided in the right to sue letter. In addition to filing his lawsuit within the 90-day period, Plaintiff must have also pursued his claim on the administrative level in a timely fashion. He simply did not do so with respect to the Title VII claim that is based upon the events of 2014 and before.

2. Sovereign Immunity

Defendants raise a valid legal defense by asserting sovereign immunity to Plaintiff's ADEA and ADA claims for monetary relief. Accordingly, Plaintiff's second claim, third claim, and fourth claim, to the extent that the fourth claim asserts an ADEA violation, must be dismissed.

The Eleventh Amendment prohibits nonconsenting states from being sued by private individuals in federal court. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This protection from suit exists unless the United States Congress has (1) validly abrogated the immunity, (2) the state has waived its sovereign immunity and consented to suit, or (3) the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), applies. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999). The state's protection of sovereign immunity applies to state agencies, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), and to state educational institutions such as MTSU. *See Stefanovic v. University of Tennessee*, 935 F.Supp. 944, 946 (E.D.Tenn. 1996); *Boyd v. Tennessee State University*, 848 F.Supp. 111, 113-14 (M.D.Tenn. 1994); *Kompara v. Board of Regents of the State Univ.*, 548 F.Supp. 537, 542 (M.D.Tenn. 1982).

By statute, the State of Tennessee has expressly preserved its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102. Further, there is also no showing that the State of Tennessee has consented to being sued in Plaintiff's lawsuit under the two statutes at issue. With respect to the ADEA, the Supreme Court has found that the ADEA does not validly abrogate the states' sovereign immunity from suits brought by private individuals under the statute. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000); *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Coger v. Board of Regents of Tenn.*, 209 F.3d 485, 486 (6th Cir. 2000). With respect to the

ADA, the Supreme Court has likewise found that the states are immune to lawsuits brought in federal court by private individuals seeking monetary damages under Title I[3] of the ADA. *Garrett*, 531 U.S at 360; *Lowe v. Hamilton Cnty. Dept. of Job & Family Servs.*, 610 F.3d 321, 325 (6th Cir. 2010); *Robinson v. University of Akron Sch. of Law*, 307 F.3d 409, 411 (6th Cir. 2002).

Plaintiff has not set forth valid legal arguments in rebuttal to the sovereign immunity defense raised by Defendants. The mere receipt and administration of federal funds by a state or its agencies does not amount to a wavier of sovereign immunity, *see Hornberger v. Tennessee*, 782 F.Supp.2d 561, 568 (M.D.Tenn. 2011), and Plaintiff has offered no specific facts or authority that establish a waiver of immunity for ADA claims based upon the receipt of federal funds by MTSU. *See Ward v. Tennessee Dep't of Educ.*, 2020 WL 1814194 at *2 (M.D.Tenn. Apr. 9, 2020) (Campbell, J.) (rejecting a plaintiff's assertion that defendant "likely" had to consent to waive sovereign immunity in order to receive federal funding to operate a school). Additionally, Plaintiff has not sued a state official and requested relief that would implicate the *Ex Parte Young* doctrine. Accordingly, the well-settled law requires the dismissal of Plaintiff's ADEA and ADA claims against Defendants. *See Miller v. Tennessee Dep't of Human Servs.*, 2016 WL 3213641 at *3 (M.D.Tenn. June 10, 2016)

---

[3] Title I of the ADA, 42 U.S.C. §§ 12122-12117, prohibits disability discrimination in the employment setting. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Plaintiff's complaint states that it is brought under Sections 12122 to 12117 of the ADA. *See* Complaint at 3.

Even though it is not pled as such a claim, to the extent that Plaintiff's claim about the lack of an elevator in the "boiler building" can be liberally construed to assert an employment discrimination claim under Title II, which governs disability discrimination involving public services, programs, and activities, 42 U.S.C. § 12132, his claim about the lack of an elevator in a building would likewise be subject to dismissal. *See Babcock v. Michigan*, 812 F.3d 531, 538 (6th Cir. 2016) (finding that a plaintiff, who alleged that she was denied equal access to her place of employment because of design defects in a building did not state a claim under Title II); *Ward*, 2020 WL 1814194 at *4 (M.D.Tenn. Apr. 9, 2020) (finding that the Eleventh Amendment barred a plaintiff's employment discrimination claims for money damages under Title II).

9

(Campbell, J.) (dismissing a state employee's claims of employment discrimination brought under the ADEA and ADA on the basis of sovereign immunity defense).

3. Plaintiff's Remaining Claims

Upon the dismissal of the above noted claims, there remain in this case Plaintiff's claim under Title VII that he was racially discriminated against when he was not granted a reasonable accommodation and his claim that MTSU retaliated against him because of his 2018 EEOC Charge by taking actions that prevented him from using "the sick leave bank" and that caused him to lose his health insurance and retirement status. Defendants do not address these claims in their motion or seek the dismissal of these claims. Accordingly, the motion to dismiss should be denied as to these claims.

**RECOMMENDATION**

Based on the foregoing, it is respectfully RECOMMENDED that the motion to dismiss (Docket Entry No. 10) filed by Defendants Middle Tennessee State University and the State of Tennessee:

1) be GRANTED with respect to Plaintiff's Claims brought under the Age Discrimination in Employment Act and the Americans with Disabilities Act and these claims be DISMISSED;

2) be GRANTED with respect to Plaintiff's Tile VII claim based upon events occurring in 2014 and before and that this claim be DISMISSED; and,

3) be DENIED with respect to Plaintiff's Title VII clams that he was racially discriminated when he was not granted a reasonable accommodation and his claim that MTSU retaliated against

him because of his 2018 EEOC Charge by taking actions that prevented him from using "the sick leave bank" and that caused him to lose his health insurance and retirement status.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge